```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


Maria Jimenez and Jose      )
Jimenez,                    )
                            )
         Plaintiffs,        )
                            )
                            )
                            )
                            )
     v.                     )    No. 22 C 2924
                            )
Stephen Kiefer,             )
                            )
         Defendant          )
and                         )
                            )
Travelers Commercial        )
Insurance Company,          )
                            )
         Citation Respondent.)
```

## Memorandum Opinion and Order

This action originated in the Circuit Court of Cook County, where plaintiffs Maria and Jose Jimenez served Travelers Commercial Insurance Company with a Citation to Discover Assets to Third Party pursuant to 735 ILCS 5/2-1402. The assets in question related to a Consent Judgment plaintiffs obtained against Travelers' insured, Stephen Kiefer, and potential claims Kiefer may have against Travelers arising out of its handling of the law suit that culminated in that judgment. Before me is Travelers' motion for summary judgment, which seeks dismissal of the citation

1

with prejudice. In addition, Travelers seeks a determination that it possesses no assets or property belonging to Kiefer that can be used to satisfy plaintiffs' judgment against him, and that plaintiffs, as Kiefer's assignees, have neither a right to enforce the judgment against Travelers, nor any rights or claims against it under § 155 of the Illinois Insurance Code. For the reasons that follow, the motion is granted.

I.

The following facts are undisputed unless otherwise noted. In the underlying state lawsuit, *Maria Jimenez and Jose Jimenez v. Stephen Kiefer* Case No. 21 L 002676 (the "*Jimenez* case"), plaintiffs sued Kiefer for personal injury and loss of consortium after the vehicle Kiefer was driving struck a Pace bus in which Maria was a passenger. At the time of the accident, Kiefer was insured under a policy issued by Travelers, which limited liability for bodily injury to $100,000 per person.

Upon receiving notice that plaintiffs were represented by an attorney, Travelers' claims professional, Dan Vogley, contacted their attorney seeking Maria's medical bills and records, wage loss information, and other materials needed to investigate the nature and extent of Maria's alleged injuries.[1] In addition,

---

[1] For ease of reference, I generally describe the correspondence between Travelers' agents and plaintiffs' attorney as communication between "Travelers" (or one of its agents) and "plaintiffs." In each instance, however, it is plaintiffs'

2

Travelers provided plaintiffs with forms seeking disclosure of Maria's medical providers and authorization to release her medical records. The following day, plaintiffs told Mr. Vogley that as a result of the accident, Maria had "shoulder issues," specifically, that she had sustained a tear of the supraspinatus and had incurred medical bills of $15,194. Plaintiffs substantiated this assertion with medical records that included findings from an MRI of Maria's right shoulder and medicals bills for her hospital treatment on the day of the accident; radiology services rendered during July of 2020; the MRI procedure performed August 3, 2020, and physical therapy treatments during August and September of 2020.

Plaintiffs sought disclosure of the limits of Kiefer's liability under Travelers' insurance policy and learned that it had a $100,000 "per person" limit. On January 12, 2021, plaintiffs sent Mr. Vogley a non-negotiable settlement demand for the $100,000 policy limit, stating that the demand would expire on March 12, 2021 at 5:00 p.m., and that "any counter for less than the policy limits will be considered a rejection of this demand." Def.'s L.R. 56.1 Stmt., ECF 28, at ¶ 15. Plaintiffs suggested that the medical bills and records they provided to Travelers substantiated their

---

attorney, Peter Bustamonte, who communicated with Travelers on plaintiffs' behalf, and who continues to represent plaintiffs in these proceedings.

demand, describing the findings of the August 3, 2020, MRI study of Maria's shoulder as follows:

> Maria Jimenez has (1) a 3 mm full thickness, partial width tear of the supraspinatus tendon at the anterior edge, (2) a partial thickness articular sided tear at the critical zone involving approximately 50% of the tendon thickness, (3) a 4 mm full thickness partial width tear at the critical zone, (4) there is sever underlying supraspinatus tendinosis, (5) there is severe infraspinatus tendinosis with high-grade partial thickness (50-75% of thickness) articular sided tearing at the critical zone measuring 3 mm, (6) severe subscapularis tendinosis is noted without fluid-filled tear.

Vogley Decl., Def.'s L.R. 56.1 Stmt., Exh. 1, ECF 28-1, at 18. Travelers asked whether plaintiffs intended to provide additional medical support for their $100,000 demand, indicating that the materials presented to date reflected only about $15,000 in medical expenses. Plaintiffs responded that Maria was beginning a new round of physical therapy, and that their demand reflected the value of her injuries, rather than her bills or treatment. Mr. Vogley indicated that he was not convinced her injuries were caused by the accident and requested five years of Maria's previous medical records as well as the films from her MRI study for review by another radiologist. Plaintiffs stated that they would not provide these materials prior to the March 12, 2021, expiration of their $100,000 demand.

Travelers and plaintiffs continued to communicate during the month of February. Travelers acknowledged Kiefer's liability but

4

reiterated that additional medical information was necessary to "evaluate the case properly" and to assess Maria's claimed injuries. Plaintiffs refused to provide additional information or to accept any amount less than the $100,000 policy limit to resolve their claims. Plaintiffs also provided a "courtesy copy" of the complaint they intended to file against Kiefer in state court.

Travelers did not offer to settle for the policy limit prior to the expiration of plaintiffs' demand. According to Mr. Vogley, plaintiffs' refusal to provide additional medical records:

> precluded evaluation of whether her alleged injuries were caused by the accident, whether they were actually conditions that pre-existed the accident and/or whether the accident aggravated those conditions and, if so, to what degree. ... Ms. Jimenez's medical records and bills that were provided to me reflected that she was afflicted with significant pre-existing conditions in her shoulder and had undergone only limited, non-invasive medical treatment as an alleged consequence of the accident. The claim file materials reflected that, at the time of the accident, she was traveling as a passenger on a bus that sustained little or no physical damage and further reflected that the accident caused only moderate damage to the Volvo. Based on these considerations, I did not believe her claim had a value approaching, let alone exceeding, $100,000 and questioned whether she had actually been injured in the accident and, if so, to what degree. My suspicion that the claimed injury was not caused by the accident, in whole or in part, was heightened by [plaintiffs'] refusal to provide the additional information that I had requested.

Vogley Decl., ECF 28-1 at 35.[2]

---

[2] In response to Travelers' factual statements grounded in this portion of Mr. Vogley's declaration, plaintiffs broadly "deny as to what Vogley believes" and "deny that non-visible (sic) property damage is indicative of a person's injuries" but do not otherwise

On March 15, 2021, plaintiffs sued Kiefer in the Circuit Court of Cook County, seeking damages for injuries Maria allegedly sustained in the accident and for Jose's alleged loss of consortium. Travelers appointed attorneys to defend Kiefer at its sole expense without a reservation of rights. In May of 2021, Kiefer's claim file was reassigned to another claims professional, Michael Maystadt, who contacted plaintiffs to inform them of the reassignment and to request any additional medical records they may have concerning their claim. Upon learning that Maria expected to undergo additional shoulder surgery, Mr. Maystadt requested "records/surgical recommendation from ortho once you receive them." Def.'s L.R. 56.1 Stmt., ¶ 50.

In August of 2021, plaintiffs provided an operative report reflecting Maria's arthroscopic surgery on August 13, 2021. *Id*. at ¶ 51. Mr. Maystadt considered this surgery to be a material change in the circumstances of Maria's claim that warranted reevaluation for settlement purposes. Maystadt Decl., Def.'s L.R. 56.1 Stmt., Exh. 3, ECF 28-3 at ¶ 15. Plaintiffs did not provide medical bills for the August 2021, surgery, so Mr. Maystadt "estimated the costs associated with the surgery, including the facility fee, the fees of the surgeon and anesthesiologist, and the cost of post-surgical physical therapy, at $75,000." *Id*. at ¶ 16. Based on this

---

dispute the facts asserted or point to evidence in the record to controvert them.

assessment, Travelers concluded that there was the possibility of a judgment against Kiefer in excess of the $100,000 policy limit and authorized Kiefer's defense counsel to offer plaintiffs the $100,000 policy limit in exchange for a full and complete release of Kiefer. Def.'s L.R. 56.1 Stmt., ECF 28 at ¶ 57. Plaintiffs refused the offer by email of October 8, 2021. *Id*. at ¶ 61.

Four days later, plaintiffs sent Kiefer's defense attorney a proposed "Stipulation, Order and Assignment and Covenant Not to Execute" (the "Stipulation"), pursuant to which Kiefer would consent to entry of a $600,000 judgment against himself and assign his rights against Travelers to the Plaintiffs. In exchange, plaintiffs would covenant not to execute the judgment against him personally but would seek to enforce it instead against Travelers. Kiefer notified Travelers of his intent to agree to the Stipulation and signed it without objection from Travelers. The Consent Judgment was entered shortly thereafter.

These proceedings followed. Plaintiffs issued the Third Party Citation under 735 ILCS 5/2-1402, which authorizes a judgment creditor "to prosecute citations to discover assets for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judgment." The Third Party Citation included interrogatories seeking information about any assets of Kiefer's held by Travelers and was accompanied by a request for the

7

production of documents concerning the policy Travelers issued to Kiefer and its handling of plaintiffs' claim. See ECF 2-1. Travelers removed the proceedings to this court, and I denied plaintiffs' motion to remand, concluding that the parties' dispute satisfied the jurisdictional requirements of 28 U.S.C. § 1332 and was statutorily eligible for removal because it presents a controversy separate and independent from the underlying case. *Jimenez v. Kiefer*, ---F. Supp. 3d.---, No. 22 C 2924, 2022 WL 3586151, at *1 (N.D. Ill. Aug. 22, 2022) ("*Kiefer*"). Shortly thereafter, Travelers filed the summary judgment motion now before me.

## II.

Rule 69 of the Federal Rules of Civil Procedure "governs collection proceedings in the federal courts and adopts whatever procedures are followed by the state courts in which the collection is sought, ... unless there is an applicable federal statute expressly regulating the execution of judgments." *Star Ins. Co. v. Risk Mktg. Grp. Inc.*, 561 F.3d 656, 661 (7th Cir. 2009) (citation omitted). As no federal statute applies here, I look to Section 2-1402(a) of the Illinois Code of Civil Procedure and Illinois Supreme Court Rule 277(a), which allow a judgment creditor to bring a supplemental proceeding against any party to "(a) question that party under oath about the whereabouts of assets that can be used to satisfy the judgment, and (b) compel application of any

8

discovered assets towards satisfaction of the judgment." *Bank of Montreal v. SK Foods, LLC*, No. 09 C 3479, 2011 WL 4578357, at *2 (N.D. Ill. Sept. 30, 2011). Although Fed. R. Civ. P. 56 does not technically apply to such proceedings, summary judgment is appropriate where the Rule's requirements—and due process—are satisfied. *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1227 (7th Cir. 1993).

Travelers argues that is entitled to summary judgment of no liability because undisputed evidence establishes that it fully discharged its duties to Kiefer as its insured. Accordingly, Travelers contends, its liability to plaintiffs for the consent judgment can be no greater than Kiefer's own liability, which is zero pursuant to the Stipulation. Additionally, Travelers argues that summary judgment is warranted for the independent reason that the "no action" provision in Kiefer's policy bars recovery of a settlement or judgment against Travelers unless: 1) Travelers agrees in writing to the settlement; or 2) the insured's liability was "determined by judgment after trial," neither of which contingencies occurred here.

Plaintiffs devote much of their response to arguing that the issues Travelers asks me to resolve are not properly before me on the Third Party Citation, which facially seeks only to *discover* assets of Kiefer's held by Travelers, not a *turnover order* directing Travelers to convey to them any such assets. There is no

merit to this argument. Under Illinois law, rights under an insurance policy may be adjudicated in citation proceedings, and "the citation defendant may litigate any proper defense to recovery under the policy." *Second New Haven Bank v. Kobrite, Inc.*, 408 N.E.2d 369, 370 (Ill. App. 1980). I previously rejected plaintiffs' argument that the Third Party Citation and Certified Answer are insufficient grounds on which to litigate the issue of Travelers' liability to plaintiffs as Kiefer's assignees. *See Kiefer*, 2022 WL 3586151, at *3-*4 (observing that "Illinois law expressly contemplates that an insurer and third-party citation respondent may litigate any proper defense to recovery under the policy in the context of citation proceedings" and noting that plaintiffs' argument "ignore[d] the reality of who the parties are, what plaintiffs are seeking in these proceedings, and the history of their prior dealings.") (cleaned up). Nothing in plaintiffs' most recent submissions persuades me that the parties' respective rights and obligations, if any, under the insurance policy and the Consent Judgment cannot be resolved on these pleadings.

Nor is there merit to plaintiffs' argument that summary judgment is premature on the present record. "Proceedings to enforce judgments are meant to be swift, cheap, informal," and the procedural rules governing them give judges substantial latitude to resolve them in any way that satisfies the requirements of due process. *Ruggiero*, 994 F.2d at 1226-27. In *Ruggiero*, the Seventh

10

Circuit concluded that the lower court's summary disposition, without a trial or evidentiary hearing, of a third party's claim to a judgment debtor's assets satisfied both due process and Fed. Rule Civ. P. 56. The court observed that the third-party petition requested specific relief and was supported by uncontroverted evidentiary materials to which the judgment debtor had an opportunity to respond; nothing further was required. *Id*. at 1227. These proceedings present a similar scenario, and summary judgment is appropriate for similar reasons.

In the Certified Answer Travelers filed on July 1, 2022, Travelers spelled out the nature of its defenses to any claims plaintiffs might seek to assert as Kiefer's assignees and explicitly put plaintiffs on notice of its intent to "promptly move for entry of summary judgment in its favor." Cert. Ans., ECF 13 at 4.[3] Travelers later provided affidavits of each of the claims

---

[3] The Certified Answer states: "Travelers fully defended Stephen in the Plaintiffs' lawsuit, at Travelers (sic) sole cost, without any reservation of its rights raised at any time. As of the date of this answer, Stephen is entitled to no proceeds under the Travelers policy because the Plaintiffs' suit against Stephen was dismissed with prejudice and the Plaintiffs provided Stephen with a covenant not to execute the Consent Judgment entered in their suit against him personally. Therefore he is not legally responsible for their alleged damages as stated in the Consent Judgment. Travelers has fully discharged all of its duties owed to Stephen under the Travelers policy with respect to the Plaintiffs' suit and owes him nothing further in regard to the suit or the Consent Judgment. Plaintiffs, as Stephen's assignees, are entitled to no greater rights under the Travelers policy than is Stephen and therefore Plaintiffs have no right to enforce the Consent

professionals assigned to plaintiffs' claim, accompanied by records reflecting their communications with plaintiffs, Kiefer, and defense counsel both before and during litigation of the underlying case. Plaintiffs apparently did not seek to depose any of these witnesses in the instant proceedings, despite their clear understanding that they were entitled to discovery to develop their claims against Travelers as Kiefer's assignees, including any claim under Section 155 of the Illinois Insurance Code. *See Kiefer*, 2022 WL 3586151, at *3 (noting that the discovery request accompanying plaintiffs' Citation sought "documents and communications ... all regarding Plaintiff's offer of settlement; all regarding any commitment by [Travelers] to protect [Kiefer] from any excess judgment; and all relied upon by [Travelers] to refuse Plaintiff's offer of settlement within the Policy limits," which I characterized as "precisely the kinds of materials plaintiffs need to establish a claim of bad faith against Travelers."). If plaintiffs—on notice of the nature of Travelers' defenses as well as its intent "promptly" to seek summary judgment— believed that Travelers' discovery responses were wanting, their recourse was to file a motion to compel. Having failed to do so, they cannot now be heard to complain that they lack evidence to controvert facts Travelers asserts based on the testimony and

Judgment against Travelers and Travelers is entitled to dismissal of the Plaintiffs' Citation to Discover Assets with prejudice."

12

documents of its witnesses. Moreover, plaintiffs offer no reason to think that additional discovery is likely to yield such evidence. For all of these reasons, I am satisfied that Travelers' liability is ripe for resolution.

As for the substance of Travelers' argument, I agree that the only reasonable conclusion that can be drawn from the record is that Travelers satisfied its duty to defend Kiefer in the underlying lawsuit, and that its duty to settle plaintiffs' claim was neither triggered nor breached. On the first question, no one disputes that Travelers defended Kiefer without a reservation of rights. On the second, Travelers is entitled to judgment as a matter of law because, as explained below, the record contains nothing from which a jury could reasonably infer that Travelers refused to act in good faith in responding to plaintiffs' non-negotiable pre-suit settlement demand—their one and only settlement offer.

"In Illinois, an insurer has a duty to act in good faith when responding to a settlement offer." *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 922 F.3d 778, 784 (7th Cir. 2019) (citing *Haddick ex rel. Griffith v. Valor Ins.*, 763 N.E.2d 299, 303 (Ill. 2001)). The duty arises "when a claim has been made against the insured and there is a reasonable probability of recovery in excess of policy limits and a reasonable probability of a finding of liability against the insured."

13

*Haddick*, 763 N.E.2d at 304. Whether a particular set of facts triggers the insurer's duty is a question of law. *John Crane, Inc. v. Admiral Ins. Co.*, 991 N.E.2d 474, 484 (Ill. App. Ct. 2013).

As the *Haddick* court noted, insurance policies generally give the insurer the right to investigate claims for settlement purposes, and indeed, the Travelers policy at issue explicitly provides that any person seeking coverage must "[c]ooperate with us in the investigation, settlement or defense of any claim or suit." Def.'s L.R. 56.1 Stmt., ECF 28 at ¶ 74. In this connection, the policy requires such persons to authorize Travelers to obtain "medical reports" and "other pertinent records." *Id*. Plaintiffs undisputedly refused to comply with these terms during the window of time their non-negotiable settlement demand was open. Indeed, plaintiffs stated affirmatively that they would not provide these materials prior to the expiration of their demand. *Id*. at ¶¶ 26-28. At that point, all agree, the materials plaintiffs had provided to Travelers showed that Maria had incurred medical bills and expenses amounting to approximately $15,000 and that her condition "had substantially improved following physical therapy." *Id*. at ¶ 21. While insurers have a duty to "faithfully consider" settlement offers within policy limits, they "need not submit to extortion." *LaRotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928, 935 (Ill. App. Ct. 1980). The only reasonable inference that can be drawn from the record is that plaintiffs refused to comply with

14

Travelers' investigation during the period in which their settlement demand was open, thwarting Travelers' ability to investigate—as both the policy and the law entitle it to do—the extent to which Maria's claimed injuries were caused or exacerbated by the accident. Accordingly, plaintiffs did not demonstrate a reasonable probability of recovery in excess of the $100,000 policy limit while their settlement demand was open. Travelers thus had no duty to settle at that time. *See Haddick*, 763 N.E.2d at 304.

And because plaintiffs cannot show that Travelers breached any duty it owed its insured, their theory that the Consent Judgment is enforceable against Travelers under *Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois*, 785 N.E.2d 1 (Ill. 2003), crumbles. As a general rule, a judgment creditor seeking to collect under a policy of insurance "is entitled to no more than that to which the judgment debtor itself would be entitled under the insurance policy." *Jacobs v. Yellow Cab Affiliation, Inc.*, 189 N.E.3d 10, 17 (Ill. App. Ct. 2020). Here, because Kiefer released any claim he may have against Travelers in the Stipulation, he is entitled to nothing under the insurance policy. *Guillen* stands for the proposition that "a settlement agreement consisting of a stipulated judgment, an assignment and a covenant not to execute," i.e., agreements such as the Stipulation, do not extinguish the insurer's legal obligation to pay "*once the insurer has breached its duty to defend.*" *Guillen* 785 N.E.2d at 13 (emphasis added).

15

The court reasoned that an insurer in breach of the duty to defend "is in no position to demand that the insured be held to a strict accounting under the policy language. Fairness requires that the insured, having been wrongfully abandoned by the insurer, be afforded a liberal construction of the 'legally obligated to pay' language." *Id*. *Guillen* does not, however, disturb "the general rule which holds that, in the absence of a breach of the duty to defend, an insured must obtain the consent of the insurer before settling with an injured plaintiff," *id*. at 6, nor does it authorize a judgment creditor to enforce claims against an insurer that the judgment debtor has released.

Because the foregoing grounds are sufficient to warrant summary judgment in Travelers' favor, I need not devote extensive discussion to Travelers' remaining arguments. Nevertheless, plaintiffs' response to Travelers' invocation of the "No Action" policy provision bears brief comment. The relevant provision states that no legal action can be brought against Travelers until: "1. We agree in writing that the insured has an obligation to pay; or 2. The amount of that obligation has been finally determined by judgment after trial." Plaintiffs argue that the first condition was satisfied because Travelers offered in writing to settle for the policy limit after Maria's August 2020 surgery, and entry of the Consent Judgment satisfied the second. Neither argument is persuasive.

16

While it is true that Travelers acknowledged Kiefer's liability for the accident, it never agreed that it was obligated to pay any specific amount of damages, and plaintiffs cite no authority suggesting that Travelers' offer of settlement amounts to such an agreement. Indeed, the court's construction of "legal obligation" in *Alliance Syndicate, Inc. v. Parsec, Inc.*, 741 N.E.2d 1039, 1046 (Ill. App. Ct. 2000) (settlement amount "was not a legal obligation to which the insurance policy applied") suggests the contrary. And if there is any authority to support plaintiffs' argument that entry of the Consent Judgment amounts to an obligation "finally determined by judgment after trial," plaintiffs have not cited it.

### III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

*[signature]*

**Elaine E. Bucklo**
United States District Judge

Dated: January 18, 2023

17